UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CIVIL ACTION NO. 3:17-CV-00271-TBR

SWM PROPERTIES INCORPORATED                                    PLAINTIFF

v.

JEFFREY ANDROLA, ET AL.                                       DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion to Strike and Substitute Defendants'
Answer to Complaint and Counterclaim. [R. 6.] Defendants responded, [R. 11.], and Plaintiff
replied, [R. 13.] Also before the Court is Defendants' Motion to Refer this case to the United
States Bankruptcy Court for the Western District of Kentucky. [R. 14.] Plaintiffs responded, [R.
16.], and Defendants replied, [R. 17.]. These matters are now ripe for adjudication. For the
following reasons, Defendants' Motion to Refer to Bankruptcy Court, [R.14], is **GRANTED**,
and Plaintiff's Motion to Strike, [R. 6], is **REFERRED to the Bankruptcy Court** for further
proceedings.

## BACKGROUND

All the issues in this case originate from the sale of a family business. On June 30, 2013,
Plaintiff, SWM Properties, Inc. ("SWM"), entered into an asset purchase agreement with
Defendant, Service Welding & Machine Company, LLC ("Debtor"), in which SWM sold the
assets that comprised its metal storage tank manufacturing business to Debtor. [*See* R. 6-2 (Asset
Purchase Agreement); R. 5 at 4, ¶24 (Defendants' Answer and Counterclaim); R. 6-1 at 3-4
(Plaintiff's Motion to Strike).] On July 1, 2013, a payment of $700,000.00 for the assets was
financed through a five year promissory note. [*See* R. 6-8 at 8 (Promissory Note); R. 6-2 at 10,

1

§1.3(ii).] The note was secured by the guaranty of "Buyer and its members," Jeffrey Androla, Douglas Voet, and James St. Clair ("Defendants"). [*Id.*] On that same day, the parties also entered a lease agreement for the land on which the business operated, [*See* R. 6-4 (Lease Agreement)], and a consulting agreement in which SWM promised to guide the transition of the business, [*See* R. 6-3 (Consulting Agreement)].

The parties assert conflicting reasons for why the business began to fail after Debtor took control. SWM alleges that concern over the struggling business motivated it to send a letter to Debtor on September 23, 2015, notifying them of SWM's desire to terminate the lease at the end of its term, July 1, 2016. [*See* R. 6-7 (Letter to Gregory Compton).] Around that same time, SWM sold part of the land upon which the business was located. [R. 5 at 5, ¶ 30.] Defendants claim that sale was executed purposely at their detriment. [R. 5 at 5, ¶ 34.] On February 17, 2017, Debtor filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Western District of Kentucky ("the Bankruptcy Court"), [*See In re Service Welding & Machine Co.*, No. 17-30485 (Bankr. W.D. Ky. Feb., 17, 2017)], which imposed an automatic stay that prevented SWM from pursuing Debtor on the promissory note. [*See* R. 1-1 at 4, ¶ 11-12 (Plaintiff Complaint); R. 5 at 5, ¶ 35.] In an effort to compel payment, SWM sued the guarantors, Androla, St. Clair, and Voet, in Jefferson County Circuit Court, demanding performance of the promissory note. [R.1-1 at 5.]

On April 28, 2017, Defendants removed the case to this Court and filed an Adversary Proceeding against SWM in the Bankruptcy Court. [*See* R. 1 (Notice of Removal); *In re Service Welding & Machine Co.*, A.P. No. 17-03022 (Bankr. W.D. Ky. Apr. 28, 2017).] The following month, Defendants filed an Answer and Counterclaim, [R. 5], which SWM moves to strike, [R.

6]. On August 23, 2017, Defendants moved to refer this case to the Bankruptcy Court in order to consolidate it with the pending actions there. [R. 14.]

If the Court grants Defendants' Motion to Refer, SWM's Motion to Strike will be referred to the Bankruptcy Court with the case. Therefore, the Court will address the Motion to Refer first and discuss the Motion to Strike as needed thereafter.

## DISCUSSION

### A. Defendants' Motion to Refer

Defendants seek referral based upon the provisions of 28 U.S.C. § 157(a), which sets forth procedures for district courts to refer cases to the bankruptcy court. 28 U.S.C. § 157(a). However, a district court cannot refer a case to the bankruptcy court unless it has bankruptcy jurisdiction under 28 U.S.C. § 1334(b). *See Sanders Confectionary Products, Inc.*, 973 F.2d 474, 482-83 (6th Cir. 1992) ("If a district court has bankruptcy jurisdiction over a case, 28 U.S.C. § 157(a) allows the court to refer the case to the bankruptcy court.") (citation omitted). Thus, the main issue before the Court is whether it has bankruptcy jurisdiction under Section 1334(b) required to refer the case to the Bankruptcy Court.

### B. Jurisdiction Under 28 U.S.C. § 1334(b)

Under Section 1334(b), "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Since these categories operate conjunctively to define the scope of jurisdiction, the Sixth Circuit has stated that "it is necessary only to determine whether a matter is at least 'related to' the bankruptcy." *Michigan Emp't Sec. Comm'n v. Wolverine Radio Co.* (*In re Wolverine Radio Co.*), 930 F.2d 1132, 1141 (6th Cir. 1991). The Sixth Circuit has adopted the

expansive definition of a "related to" proceeding first articulated by the Third Circuit in *Pacor, Inc. v. Higgins* (*In re Pacor*). *See In re Wolverine Radio Co.*, 930 F.2d at 1142 (adopting *In re Pacor*, 743 F.2d 984 (3d Cir. 1984), overruled on other grounds by *Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 124–25 (1995)). Under this definition, a proceeding is "related to" a bankruptcy action if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *In re Pacor*, 743 F.2d at 994 (emphasis omitted). "An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Robinson v. Michigan Consol. Gas Co. Inc.*, 918 F.2d 579, 583 (6th Cir. 1990) (quoting *In re Pacor*, 743 F.2d at 994); *see also In re Dow Corning Corp.*, 86 F.3d 482, 489 (6th Cir. 1996) (emphasizing that the impact on the debtor or bankruptcy estate only needs to be "conceivable"). This is a "broad" basis for jurisdiction that "empowers courts to deal efficiently and effectively with the entire universe of matters connected with bankruptcy estates." *McKinstry v. Sergent*, 442 B.R. 567, 573 (quoting *Kelley v. Nodine* (*In re Salem Mortg. Co.*), 783 F.2d 626, 633–34 (6th Cir.1986) and *Boston Reg'l Med. Ctr., Inc. v. Reynolds* (*In re Boston Reg'l Med. Ctr., Inc.*), 410 F.3d 100, 105 (1st Cir.2005)) (internal quotations omitted). However, the Sixth Circuit has permitted one caveat to the test stating that "situations may arise where an extremely tenuous connection to the estate would not satisfy the jurisdictional requirement . . .." *In re Salem Mortgage Co.*, 783 F.2d at 634.

The Court finds that the instant case is "related to" Debtor's action against SWM Properties in the Bankruptcy Court because the outcome could conceivably impact the handling and administration of the bankruptcy estate. Specific to the facts of this case, a holding of liability against the defendant guarantors could reduce SWM's claim against the assets of the

bankruptcy estate. *See In re Showcase Natural Casing Co., Inc.*, 54 B.R. 142, 144 (Bankr. S.D. Ohio 1985); *In re Red Top Rentals, Inc.*, 2010 WL 2737182, at *3 (Bankr. E.D. Mich. 2010) (holding that there was "related to" jurisdiction because an action "to enforce the guaranty 'could conceivably' affect the Debtor's estate.").[1] In *In re Showcase*, the plaintiff sued the defendants on their guaranty while the debtor had an ongoing bankruptcy case. 54 B.R. at 143. After acknowledging the general order of reference from the district court, the bankruptcy court looked to the newly adopted Section 1334 and had "no doubt that the present suit [was] within the jurisdiction conferred by Congress on the district court in bankruptcy matters." *Id*. at 144. The court reasoned that "the requisite relationship [was] to be found because if there [was] a holding of liability against defendants on their guaranty, this [would] necessarily reduce plaintiff's claim against the debtor." *Id*.

Similarly, in the case at hand, SWM sues the president of Service Welding, Androla, as well as two other "managers" of Service Welding, St. Clair and Voet, over the personal guaranty of payment they signed for the debts owed by Service Welding to SWM. [R. 6-8 at 8.][2] Following the reasoning of *In re Showcase*, a recovery against Androla, St. Clair, and Voet on their guaranty could reduce SWM's claim against the debtor, Service Welding. Therefore, "related to" jurisdiction exists and the Court will refer the matter to the Bankruptcy Court.

In opposition, SWM argues that the connection between the guarantors and SWM is "extremely tenuous" and does not satisfy the jurisdictional requirement. [R. 16 at 4 (quoting *In re K & R Mining, Inc.*, 135 B.R. 269, 271 (Bankr. N.D. Ohio 1991).] However, in its citations to both *In re K & R Mining, Inc.* and *Matter of Tvorik*, SWM skipped an important procedural step.

---

[1] It should be noted that *In re Red Top* involved removal from state court to federal bankruptcy court, instead of a motion to refer to federal bankruptcy court like the one at hand. However, the "related to" jurisdiction analysis is still the same.

[2] It is unclear if St. Clair and Voet had official titles within the company, however, SWM referred to them as "managers" in their Memorandum in Motion to Strike [R. 6-1 at 2.]

In the Western District of Kentucky, the district court first must decide whether it has jurisdiction under 28 U.S.C. § 1334(b), and then, under Local Rule 83.12(a), the case is to be referred to a bankruptcy judge to decide whether a proceeding is a "core" or "noncore" proceeding. *See Tomassi v. MDS, Inc.*, 2013 WL 1636435, at *2 (W.D. Ky. 2013) (explaining the analysis for determining whether the court has jurisdiction under 28 U.S.C. § 1334(b)); *K & B Capital, LLC v. Ogden*, 2005 WL 1799735, at *1 (W.D. Ky. 2005) (explaining the procedures for referring cases to bankruptcy courts under 28 U.S.C. § 157). Both cases cited by SWM are "core proceeding" decisions by bankruptcy courts that occurred *after* the cases were referred by the correlating district courts. *See In re K & R Mining, Inc.*, 135 B.R. at 270 (stating that the district court had jurisdiction under § 1334 and the case was automatically referred to the bankruptcy courts pursuant to local rules); *Matter of Tvorik*, 83 B.R. 450, 453 (Bankr. W.D. Mich. 1988) (same). This case is not yet at that point in its procedural journey. The issue of whether the proceedings in this case are properly before a bankruptcy judge or this Court is not appropriately determined by this Court as an initial matter. 28 U.S.C. § 157(b)(3) provides that:

> [t]he bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11. A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law.

Therefore, the Court will refer the matter to the Bankruptcy Court for determination of whether the case at bar constitutes a "core proceeding" within the meaning of 28 U.S.C. § 157(b). As SWM's Motion to Strike is a part of this case, it will be referred to the Bankruptcy Court as well.

### C. Consent for a Jury Trial

SWM further argues that even if the Court has "related to" jurisdiction, the Motion to Refer should still be denied because SWM would not consent to a jury trial before the

Bankruptcy Court. [R. 16 at 6.][3] Once again, SWM is a few procedural steps ahead of its case. Indeed, SWM has the Seventh Amendment right to a jury trial, and the Bankruptcy Court cannot conduct a jury trial without the consent of *both* parties. *See* 28 U.S.C. § 157(e). "However, the Bankruptcy Court's jurisdiction to enter final orders in core matters, or proposed findings and conclusions in non-core matters, is not revoked simply because the movants maintain a right to trial by jury." *In re Batt*, 2012 WL 4324930, at *2 (W.D. Ky. 2012) (citing *In re Appalachian Fuels, L.L.C.*, 472 B.R. 731, 740 (E.D. Ky. 2012)).[4] Therefore, the Bankruptcy Court may maintain jurisdiction over this case until all pre-trial motions and possible resolutions have been extinguished and the case "becomes trial ready." *Venture Holdings Co. v. Millard Design Pty., Ltd.*, 2006 WL 800806, at *1 (E.D. Mich. 2006) (holding that the adversary proceeding should not be withdrawn from bankruptcy court due to a demand for a jury trial in district court); *see also In re Batt* 2012 WL 4324930, at *2 ("[T]he Bankruptcy Court may retain jurisdiction in such a case until it is established that a trial is actually necessary, or in other words, until the possibilities of summary judgment or other resolution have been extinguished.") (citations omitted).

## CONCLUSION

For the reasons stated herein, **IT IS HEREBY ORDERED** that Defendant's Motion to Refer to Bankruptcy Court, [R. 14], is **GRANTED**, and Plaintiff's Motion to Strike and Substitute, [R. 6], is **REFERRED to the Bankruptcy Court** for further proceedings.

**IT IS SO ORDERED.**

cc: Counsel of Record

---

[3] As cited by SWM, under 28 U.S.C. § 157(e), the Bankruptcy Court may hold a jury trial if the district court designates it to exercise such jurisdiction and all parties give express consent. 28 U.S.C. § 157(e).
[4] In *In re Batt*, the district court held that the movants' demand for a jury trial and their arguments over whether the claims were "non-core" were premature because the Bankruptcy Court still retained jurisdiction.